# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CINDY D. BUTTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-206-G |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Cindy D. Butts brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Upon review of the administrative record (Doc. No. 12, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties, the Court finds that the decision of the Commissioner should be reversed and the matter remanded for further administrative proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB application on December 11, 2014, ultimately alleging disability beginning October 27, 2014. R. 13, 184-90, 216. Following denial of her application initially and on reconsideration, a hearing was held before an

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

Administrative Law Judge ("ALJ") on June 10, 2016. R. 13, 30-95, 123-27, 130-32. The ALJ issued an unfavorable decision on August 18, 2016. R. 10-24.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 27, 2014, the amended alleged disability-onset date.[2] R. 16. At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, affective disorder, anxiety-related disorder, and personality disorder with cluster B traits. R. 16-17. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17-19.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her medically determinable impairments. R. 19-22. The ALJ found that Plaintiff had the residual functional capacity to

> perform medium exertion work as defined in 20 CFR 404.1567(c), with the following mental abilities: the claimant retains sufficient concentration, memory, and general cognitive abilities to understand, remember, and carry out "simple" and some, but not all, more complex tasks, involving objects and/or non-complex tasks. "Simple" tasks means unskilled entry-level SVP one work, which requires only a simple demonstration, and unskilled entry-level SVP two work, which can be learned in 30 days or less. The claimant can also perform "detailed" tasks involving objects or non-complex tasks that are SVP three and four semi-skilled jobs. The claimant retains adequate social skills to respond/relate appropriately to supervisors and coworkers on a "superficial work basis," i.e., brief, succinct, cursory, concise communication relevant to the task being performed. The claimant is aware

---

[2] The ALJ determined that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2018." R. 15.

2

of basic hazards and can adapt to a work environment that does not involve numerous changes in daily routines are [sic] work duties.

R. 19-20. At step four, the ALJ made no findings concerning Plaintiff's ability to perform her past relevant work. R. 22.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 22-23. Taking into consideration the hearing testimony of a vocational expert ("VE") regarding the degree of erosion to the unskilled medium occupational base that is caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform occupations such as laundry worker, automobile detailer, and hand packager, all of which offer jobs that exist in significant numbers in the national economy. R. 23. On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 27, 2014, through the date of the decision. R. 23. Plaintiff's request for review by the Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. R. 1-7; *see* 20 C.F.R. § 404.981.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th

Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In her request for judicial review, Plaintiff argues that (1) the ALJ erred by failing to discuss evidence probative of Plaintiff's physical symptoms and impairments; (2) the RFC finding is not supported by substantial evidence; and (3) the ALJ failed to adequately develop the record regarding Plaintiff's physical impairments. *See* Pl.'s Br. (Doc. No. 16) at 11-23.

A. *The Relevant Record*

Amber Jones, an advanced practice registered nurse (APRN) examined Plaintiff on thirteen occasions between July 2014 and April 2016. *See* R. 481-94 (Ex. 3F), 517-51 (Ex. 10F). During all but one of these examinations, Ms. Jones identified physical conditions regarding Plaintiff's back, including the presence of scoliosis (sometimes indicated as severe), tenderness, limited range of motion secondary to pain, and decreased reflexes on

the right side. *See* R. 483, 487, 491, 519, 524, 528, 532, 536, 540, 543, 547, 550. Ms. Jones also indicated that Plaintiff's back had 5/5 motor strength in all groups bilaterally, intact and bilaterally equal sensation to light touch, and a normal but stiff-appearing gait. *See* R. 483, 487, 491, 519, 524, 528, 532, 536, 540, 543, 547, 550. With regard to Plaintiff's cervical spine, Ms. Jones identified a normal contour, midline tenderness, and decreased range of motion. *See* R. 483, 487, 491, 519-20, 524, 528, 532, 536, 540, 543, 547, 550. In addition, Ms. Jones identified on certain occasions guarding and crepitus in Plaintiff's knees, diffuse bony nodules in Plaintiff's knees and elbows, and swelling or edema in Plaintiff's hands. *See* Pl.'s Br. at 13; R. 528-29, 533, 537, 540-41, 544. Finally, Ms. Jones discussed the results of MRI scans performed prior to 2013, including their findings that Plaintiff had degenerative disc disease, scoliosis, and "[m]ild compression of the superior end plate of L1." *See, e.g.,* R. 481.

In the March 17, 2015 disability determination explanation for Plaintiff's DIB claim at the initial level, state-agency reviewing physician William H. Oehlert, MD, briefly reported some of Ms. Jones' findings and the results of the MRIs. After examining this evidence, Dr. Oehlert concluded that the medical evidence of record supported a finding of degenerative disc disease but "[did] not support any specific physical limitations." R. 101. A similar result was reached by reviewing physician Sean Neely, DO, in the disability determination explanation for Plaintiff's DIB claim at the reconsideration level. *See* R. 115-17. Dr. Neely reported Ms. Jones' examination findings, including that Plaintiff's cervical spine was tender with decreased range of motion secondary to pain, that Plaintiff's back had tenderness throughout the midline and decreased range of motion secondary to

5

pain, that Plaintiff's reflexes were decreased on the right, that her sensation was intact, and that her gait was normal but stiff. R. 116. Dr. Neely then discussed the MRI results reflected in Ms. Jones' treatment notes. R. 116. Dr. Neely opined that Plaintiff was limited to lifting, carrying, pushing, and/or pulling no more than 50 pounds occasionally and 25 pounds frequently, that she could stand and/or walk no more than 6 hours in an 8-hour workday and sit not more than 6 hours in an 8-hour workday, and that she had no postural, manipulative, visual, communicative, or environmental limitations. R. 116. Like Dr. Oehlert, Dr. Neely noted that degenerative disc disease was present but that the medical evidence did not support any specific physical limitations. R. 117. Dr. Neely further opined that Plaintiff's "RFC is limited by pain associated with fibromyalgia, arthritis, and cervical [degenerative disc disease]." R. 117.

After appealing the ALJ's unfavorable decision, Plaintiff submitted additional evidence to the Appeals Council, which the Appeals Council made part of the record. *See* R. 6-7 (identifying Exhibit Nos. 19E, 11F, 12F, 13F, 14F, 15F, 16F, 17F, 18F, 19F as new exhibits). Included in this new evidence were additional MRI results dated May 2016. R. 571-76. These MRI findings included mild, chronic compression fractures of the T11 and L1 vertebral bodies, mild degenerative disc disease of the thoracic spine, multilevel discogenic and degenerative changes in the cervical spine, and moderate leftward scoliotic curvature of the lumbar spine. R. 572-76.

*B. Discussion*

Plaintiff argues that the ALJ committed legal error by ignoring medical evidence of Plaintiff's physical impairments reflected in Ms. Jones' notes and in the MRI scan results. *See* Pl.'s Br. at 11-14.

While an ALJ "is not required to discuss every piece of evidence," the ALJ must discuss "the evidence supporting his decision," the "uncontroverted evidence [the ALJ] chooses not to rely upon," and "significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007); *see also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

In his RFC discussion, the ALJ reported the findings of the early MRIs, as articulated by Ms. Jones in her Progress Notes. R. 21, 481. The ALJ stated that the

> [m]edical evidence of record showed that an MRI on April 9, 2012 showed minimal degenerative disease of the lower 3 levels of the thoracic spine with no significant spinal canal stenosis or neural foraminal encroachment. There was a mild scoliosis of the thoracic spine. Included only on sagittal examinations there was multilevel degenerative disc disease of the cervical spine with disc osteophyte complexes noted. Anterior cervical discectomy and fusion from C4-C6 with instrumentation and degenerative disc disease ("DDD") was present, but the medical evidence of record did not support any specific physical limitations.

R. 21. The ALJ omitted from his discussion, however, that the MRIs detected moderate leftward scoliotic curvature. R. 481.

7

Nor did the ALJ discuss Ms. Jones' separate findings of severe scoliosis, tenderness, and limited range of motion in Plaintiff's back and cervical spine in his RFC analysis.[3] Ms. Jones additionally outlined Plaintiff's pain complaints and pain management from July 2014 to April 2016, but these finding were not discussed in the RFC analysis. *See* R. 481-94, 517-51. Because Ms. Jones' findings are significantly probative of the intensity, persistence, and limiting effects of the symptoms stemming from Plaintiff's degenerative disc disease, it was error for the ALJ not to discuss them. *See Clifton*, 79 F.3d at 1009-10; *Hardman*, 362 F.3d at 681; SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also id.* at *1 (prescribing that the Ruling applies to SSA decisions issued on or after March 28, 2016); 20 C.F.R. § 404.1529(c).

Plaintiff additionally argues that an RFC of medium exertion work is not supported by substantial evidence, pointing both the Ms. Jones' Progress Notes and to the 2016 MRI scan results.[4] *See* Pl.'s Mot. at 14-19. Because the Court has determined that remand is

---

[3] Ms. Jones' findings are not directly referenced at any point in the ALJ's written decision. At step two, the ALJ "incorporated into [his] decision by reference" the discussion of Dr. Oehlert in the disability determination explanation at the initial level. R. 16. There, Dr. Oehlert briefly referenced some of Ms. Jones' findings regarding Plaintiff's back and cervical spine. R. 100-01. The Court finds that this attenuated reference at step two is insufficient to satisfy the ALJ's obligation to discuss uncontroverted and probative evidence relevant to Plaintiff's RFC.

[4] The record reflects that the 2016 MRI scan results were not available to the ALJ but were submitted to the Appeals Council after the issuance of the ALJ's unfavorable decision. The Tenth Circuit has held, however, that "new evidence [submitted to the Appeals Council] becomes a part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence." *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (citing 20 C.F.R. § 404.970(b)); *see Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). The Appeals Council stated that it considered the additional evidence but concluded that the information did not provide a basis for changing the ALJ's decision. R. 2. The Court notes, however, that the 2016 MRI findings indicate an increase in severity

8

required due to Plaintiff's failure to discuss the probative evidence found in Ms. Jones' Progress Notes, the Court does not address the remaining claims of error raised by Plaintiff. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## CONCLUSION

The decision of the Commissioner is REVERSED and REMANDED for further proceedings in accordance with sentence four of 42 U.S.C. § 405(g). A separate judgment shall be entered.[5]

*[signature]*

CHARLES B. GOODWIN
United States District Judge

---

of Plaintiff's back issues. *Compare* R. 481 (pre-2013 MRIs finding "mild compression of the superior end plate of L1), *with* R. 572, 575-76 (2016 MRIs finding "mild, chronic compression fractures of the T11 and L1 vertebral bodies," as well as mild to moderate spinal stenosis and moderate leftward scoliotic curvature of the lumbar spine).

[5] Plaintiff's Motion to Expedite (Doc. No. 23) is DENIED.